TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
AGUSTIN D. OROZCO (Cal. Bar No. 271852)
Public Corruption & Civil Rights Section
CAROLYN S. SMALL (Cal. Bar No. 304938)
Major Frauds Section
Assistant United States Attorneys
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2216/2041
     Facsimile: (213) 894-0141
     E-mail:   agustin.d.orozco@usdoj.gov
               carolyn.small@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>           v.<br><br>GEOFFREY ELDRIDGE HULL,<br>aka "Jeff H.,"<br>     "Geoff Eldredge,"<br>     "Geoff Eldridge,"<br>     "Jefrii Eldridge,"<br>     "Geoffrey Hulle," and<br>     "Jeff Bluthenthal,"<br><br>        Defendant. | No. CR 20-264-FMO<br><br>PLEA AGREEMENT FOR DEFENDANT<br><u>GEOFFREY ELDRIDGE HULL</u> |

    1.   This constitutes the plea agreement between GEOFFREY ELDRIDGE HULL ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

1

DEFENDANT'S OBLIGATIONS

2      2.   Defendant agrees to:

3           a.   At the earliest opportunity requested by the USAO and
4  provided by the Court, appear and plead guilty to count one of the
5  indictment in United States v. Geoffrey Eldridge Hull, CR No. 20-264-
6  FMO, which charges defendant with wire fraud in violation of 18
7  U.S.C. § 1343.

8           b.   Not contest facts agreed to in this agreement.

9           c.   Abide by all agreements regarding sentencing contained
10 in this agreement.

11          d.   Appear for all court appearances, surrender as ordered
12 for service of sentence, obey all conditions of any bond, and obey
13 any other ongoing court order in this matter.

14          e.   Not commit any crime; however, offenses that would be
15 excluded for sentencing purposes under United States Sentencing
16 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
17 within the scope of this agreement.

18          f.   Be truthful at all times with the United States
19 Probation and Pretrial Services Office and the Court.

20          g.   Pay the applicable special assessment at or before the
21 time of sentencing unless defendant has demonstrated a lack of
22 ability to pay such assessments.

23          h.   Make restitution in accordance with the Court's order.

24          i.   Defendant agrees that any and all criminal debt
25 ordered by the Court will be due in full and immediately.  The
26 government is not precluded from pursuing, in excess of any payment
27 schedule set by the Court, any and all available remedies by which to

28

2

1   satisfy defendant's payment of the full financial obligation,

2   including referral to the Treasury Offset Program.

3          j.   Complete the Financial Disclosure Statement on a form

4   provided by the USAO and, within 30 days of defendant's entry of a

5   guilty plea, deliver the signed and dated statement, along with all

6   of the documents requested therein, to the USAO by either email at

7   usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

8   Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

9   Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

10  criminal debt shall be assessed based on the completed Financial

11  Disclosure Statement and all required supporting documents, as well

12  as other relevant information relating to ability to pay.

13         k.   Authorize the USAO to obtain a credit report upon

14  returning a signed copy of this plea agreement.

15         l.   Consent to the USAO inspecting and copying all of

16  defendant's financial documents and financial information held by the

17  United States Probation and Pretrial Services Office.

18         m.   Defendant further agrees to the entry as part of

19  defendant's guilty plea of a personal money judgment of forfeiture

20  against defendant in the amount of $643,106.11, which sum defendant

21  admits was derived from proceeds traceable to the violations

22  described in the factual basis.  Defendant understands that the money

23  judgment of forfeiture is part of defendant's sentence, and is

24  separate from any fines or restitution that may be imposed by the

25  Court.

THE USAO'S OBLIGATIONS

27  3.   The USAO agrees to:

28         a.   Not contest facts agreed to in this agreement.

3

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

<u>NATURE OF THE OFFENSE</u>

4.   Defendant understands that for defendant to be guilty of the crime charged in count one of the indictment, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, the following must be true:

(1) The defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts;

(2) The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

4

1        (3) The defendant acted with the intent to defraud, that

2   is, the intent to deceive and cheat; and

3        (4) The defendant used, or caused to be used, an

4   international or interstate wire communication to carry out or

5   attempt to carry out an essential part of the scheme.

## PENALTIES AND RESTITUTION

7       5.   Defendant understands that the statutory maximum sentence

8   that the Court can impose for a violation of Title 18, United States

9   Code, Section 1343, is: 20 years' imprisonment; a 3-year period of

10  supervised release; a fine of $250,000 or twice the gross gain or

11  gross loss resulting from the offense, whichever is greatest; and a

12  mandatory special assessment of $100.

13      6.   Defendant understands that defendant will be required to

14  pay full restitution to the victims of the offense to which defendant

15  is pleading guilty.  Defendant agrees that, in return for the USAO's

16  compliance with its obligations under this agreement, the Court may

17  order restitution to persons other than the victims of the offense to

18  which defendant is pleading guilty and in amounts greater than those

19  alleged in the count to which defendant is pleading guilty.  In

20  particular, defendant agrees that the Court may order restitution to

21  any victim of any of the following for any losses suffered by that

22  victim as a result: (a) any relevant conduct, as defined in U.S.S.G.

23  § 1B1.3, in connection with the offense to which defendant is

24  pleading guilty; and (b) any count dismissed pursuant to this

25  agreement as well as all relevant conduct, as defined in U.S.S.G.

26  § 1B1.3, in connection with those counts.  The parties currently

27  believe that the applicable amount of restitution is approximately

28  $1,560,321.12, but recognize and agree that this amount could change

based on facts that come to the attention of the parties prior to sentencing.

7.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial

6

of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts forth in Attachment A to this agreement, and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds

appropriate up to the maximum set by statute for the crime of conviction.

12. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Specific Offense Characteristics: | | |
| Loss More Than $1,500,000 | At Least +16 | U.S.S.G. § 2B1.1(b)(1)(I) |
| 10 or More Victims | +2 | U.S.S.G. § 2B1.1(b)(A)(i) |

While both parties agree that the loss exceeds $1,500,000, such that a loss enhancement of at least 16 applies under U.S.S.G. § 2B1.1(b)(1)(I), the USAO reserves the right to argue for a higher loss enhancement, up to a loss enhancement of 18, pursuant to U.S.S.G. § 2B1.1(b)(1)(J). In addition, defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

13. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15. Defendant understands that by pleading guilty, defendant gives up the following rights:

     a. The right to persist in a plea of not guilty.

     b. The right to a speedy and public trial by jury.

8

c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

16.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that

the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

17.  Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, including, to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the amount and terms of any restitution order, provided it requires payment of no more than $1,560,321.12; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the

statement of facts provided herein is insufficient to support
defendant's plea of guilty.

19.   This agreement does not affect in any way the right of the
USAO to appeal the sentence imposed by the Court.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

20.   Defendant agrees that if, after entering a guilty plea
pursuant to this agreement, defendant seeks to withdraw and succeeds
in withdrawing defendant's guilty plea on any basis other than a
claim and finding that entry into this plea agreement was
involuntary, then (a) the USAO will be relieved of all of its
obligations under this agreement; and (b) should the USAO choose to
pursue any charge that was either dismissed or not filed as a result
of this agreement, then (i) any applicable statute of limitations
will be tolled between the date of defendant's signing of this
agreement and the filing commencing any such action; and
(ii) defendant waives and gives up all defenses based on the statute
of limitations, any claim of pre-indictment delay, or any speedy
trial claim with respect to any such action, except to the extent
that such defenses existed as of the date of defendant's signing this
agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

21.   Defendant agrees that if the count of conviction is
vacated, reversed, or set aside, both the USAO and defendant will be
released from all their obligations under this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

22.   This agreement is effective upon signature and execution of
all required certifications by defendant, defendant's counsel, and an
Assistant United States Attorney.

1

BREACH OF AGREEMENT

2      23.  Defendant agrees that if defendant, at any time after the
3  signature of this agreement and execution of all required
4  certifications by defendant, defendant's counsel, and an Assistant
5  United States Attorney, knowingly violates or fails to perform any of
6  defendant's obligations under this agreement ("a breach"), the USAO
7  may declare this agreement breached.  All of defendant's obligations
8  are material, a single breach of this agreement is sufficient for the
9  USAO to declare a breach, and defendant shall not be deemed to have
10  cured a breach without the express agreement of the USAO in writing.
11  If the USAO declares this agreement breached, and the Court finds
12  such a breach to have occurred, then: (a) if defendant has previously
13  entered a guilty plea pursuant to this agreement, defendant will not
14  be able to withdraw the guilty plea; and (b) the USAO will be
15  relieved of all its obligations under this agreement.

16      24.  Following the Court's finding of a knowing breach of this
17  agreement by defendant, should the USAO choose to pursue any charge
18  that was either dismissed or not filed as a result of this agreement,
19  then:

20          a.  Defendant agrees that any applicable statute of
21  limitations is tolled between the date of defendant's signing of this
22  agreement and the filing commencing any such action.

23          b.  Defendant waives and gives up all defenses based on
24  the statute of limitations, any claim of pre-indictment delay, or any
25  speedy trial claim with respect to any such action, except to the
26  extent that such defenses existed as of the date of defendant's
27  signing this agreement.

28

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed-to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

25. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

26. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  This paragraph permits both

the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the Factual Basis or Sentencing Factors agreed to in this agreement.

27. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

28. Defendant understands that, except as set forth herein and in any contemporaneous agreement or addendum signed by all parties, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

1    PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2         29.   The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    TRACY L. WILKISON
     United States Attorney

9

10                                                1/14/2022

     _____             _____
     AGUSTIN D. OROZCO                            Date
11   CAROLYN S. SMALL
     Assistant United States Attorneys
12
                                                  01 / 13 / 2022
13   _____             _____
     GEOFFREY ELDRIDGE HULL                       Date
14   Defendant

15   _____             1/14/22
     IAN MICHAEL WALLACH                          _____
     JOVAN L. BLACKNELL                           Date
16   Attorneys for Defendant
     GEOFFREY ELDRIDGE HULL
17

18

19

20

21

22

23

24

25

26

27

28

                                15

1                 CERTIFICATION OF DEFENDANT

2      I have read this agreement in its entirety.  I have had enough

3 time to review and consider this agreement, and I have carefully and

4 thoroughly discussed every part of it with my attorney.  I understand

5 the terms of this agreement, and I voluntarily agree to those terms.

6 I have discussed the evidence with my attorney, and my attorney has

7 advised me of my rights, of possible pretrial motions that might be

8 filed, of possible defenses that might be asserted either prior to or

9 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10 of relevant Sentencing Guidelines provisions, and of the consequences

11 of entering into this agreement.  No promises, inducements, or

12 representations of any kind have been made to me other than those

13 contained in this agreement and any contemporaneously filed agreement

14 or addendum signed by all parties.  No one has threatened or forced

15 me in any way to enter into this agreement.  I am satisfied with the

16 representation of my attorney in this matter, and I am pleading

17 guilty because I am guilty of the charge and wish to take advantage

18 of the promises set forth in this agreement, and not for any other

19 reason.

20 *Geoffrey Hull*                01 / 13 / 2022

21 GEOFFREY ELDRIDGE HULL            Date
   Defendant

22

23

24

25                        .

26

27

28

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am GEOFFREY ELDRIDGE HULL's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement and any contemporaneously filed agreement or addendum signed by all parties; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____        01/14/2022
IAN MICHAEL WALLACH                       Date
JOVAN L. BLACKNELL
Attorneys for Defendant
GEOFFREY ELDRIDGE HULL

17

# ATTACHMENT  A

**Attachment A**

**Factual Basis**

Beginning on or before April 25, 2016, and continuing until at least November 18, 2019, in Los Angeles County and elsewhere, GEOFFREY ELDRIDGE HULL ("defendant") knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain property from such victims by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts. For the purpose of executing the scheme to defraud, defendant communicated with victims using wire communications in interstate and foreign commerce, namely phone calls, text messages, and email communications.

<ins>Defendant's Scheme</ins>

The scheme to defraud operated as follows: Defendant marketed himself and his companies as being able to find people to take over high-end or exotic car leases from individuals no longer wishing to continue those leases. Despite touting the success of this venture, defendant and his companies did not find people to take over these leases, nor did defendant intend to. Instead, defendant would offer these cars for rent, often for a lump sum of cash, and would pass little of the rent money on to the original leaseholders. Defendant knew he would not find a credit worthy buyer to take over the lease, he did not intend to make all of the lease payments, and renters would have no restrictions on how they used the vehicles.

Deft's Initials

Defendant found victims who were seeking to transfer the leases on their high-end or exotic cars online.  After finding the victims, defendant would email the victims to try to convince them to provide him and his companies with their luxury and exotic cars.

In many of these emails, defendant represented that his company "specialize[d] in quickly locating credit-qualified applicants to assume leases on luxury and exotic vehicles," and offered "a special program called 'Lease Consignment' that will make your monthly lease payment every month until your lease has been transferred."  If a victim asked for a reference, defendant would send the victim the name and phone number of a person who purported to be an objective, satisfied customer of the Lease Consignment Program, but who in fact was defendant's longtime friend and business associate.  If a victim was hesitant or had questions, defendant would attempt to reassure the victim by making false representations and omitting material facts concerning the Lease Consignment Program.  For example, defendant would attempt to reassure victims that their monthly car lease payments would be made by defendant, through his company, by falsely representing that payments had never been an issue with past clients and there never could be a scenario in which the victim's credit would be impacted while the victim's car was on consignment with defendant.

If the victim agreed to participate in defendant's Lease Consignment Program, defendant, through his company, would enter into a "Lease Consignment Agreement" (the "Agreement") with the

Deft's Initials

Page 3 of 7

victim.  The Agreement would require the victim to "deliver
possession and use" of the victim's car to defendant.  In
exchange, defendant, through his company, agreed to actively
market the victim's car to quickly connect the victim with a
"credit-qualified buyer to legally assume the lease through the
originating finance company."  Defendant would also agree to
cover the victim's monthly car lease payments, assume all
liability, and indemnify the victim against any loss or damages
for the period between when the victim signed the Agreement and
when the car either was returned to the originating finance
company, or its lease was successfully transferred.

     The Agreement would typically permit defendant, through his
company, to rent the victim's car to a third party if defendant
was unable to find a qualified buyer to assume the lease within
a specified time period.  However, in connection with this
rental provision, defendant, through his company, agreed to:
(1) monitor the miles of the victim's car to ensure the car
stayed within its mileage allotment as determined by the
originating finance company and thus avoid any mileage-overage
fee; (2) pay any mileage-overage fee up to a specified amount
per mile; (3) pay for any maintenance, mechanical issues, or
damage that arose from the rental of the victim's car; and
(4) pay any deposits, fees, or payments that the renter failed
to pay in a timely fashion.

     Once the Agreement was executed by defendant and the
victim, defendant would take possession of the victim's car.

Deft's Initials

Page 4 of 7

Defendant would then rent, or cause to be rented, the victim's car and would receive payment for these rentals.

Contrary to defendant's representations that his company would cover the victim's monthly car lease payments and pay any deposits, fees, or payments the renter failed to pay in a timely fashion, defendant would not make full and timely monthly payments on the victim's car lease. If a victim's car payment was made at all, the payment was typically untimely and not for the full amount of the monthly car lease payment.

When victims complained to defendant about missed or late car lease payments, defendant would attempt to reassure the victims by falsely representing that payment would be made soon; transmitting a partial payment; transmitting a payment that was later returned for insufficient funds; or sending the victim what purported to be a payment confirmation number, even if no payment had in fact been made or if there were insufficient funds to support the payment.

When victims requested termination of the Agreement and the return of their cars, defendant would fail to return the cars in a timely manner, often resulting in the victim reporting the car stolen to law enforcement. When victims' cars were returned to the victims through law enforcement seizures, repossession, and other means, the cars were often damaged, had incurred toll and parking violations, and had been driven over the allotted mileage. Contrary to defendant's representations that his company would pay for mileage-overage fees, damage, and unpaid

Deft's Initials _____

fees resulting from the rental of victims' cars, defendant would
not provide full payments to the victims for these expenses.

When victims posted negative reviews online about defendant
and his Lease Consignment Program, defendant would change his
company name and resume his scheme under an alias.  The company
names defendant used to operate his scheme included Exotic Lease
Transfer, Luxe Lease Transfer, Shift Lease, Veer Lease, Torque
Transfer, Haven Transfer, Early Lease, and Open Lease Transfer.
The aliases defendant used included, but were not limited to,
"Jeff H.," "Geoff Eldredge," "Geoffrey Eldridge," "Jefrii
Eldridge," "Geoffrey Hulle," and "Jeff Bluthenthal."

Victim B.R.

Among defendant's victims was victim B.R.  On May 15, 2018,
in trying to decide whether or not to use defendant's company to
transfer a 2018 Rolls-Royce Dawn, B.R. asked defendant via email
how many cars defendant had consigned in the past 12 months and,
of those, how many had resulted in a successful lease transfer.
Defendant responded via an interstate Google email:  "We've
successfully transferred close to 150 vehicles in the last 12
months.  Since inception, we've only been unsuccessful in
transferring a car on two occasions (a Maserati Ghibli both
times)."  However, as defendant knew at the time he sent the
email, both statements were false and only meant to defraud B.R.
out of his car.  In addition, when B.R. asked defendant for his
name so B.R. could run a background check, defendant emailed
stating his name was "Jeff Hall" -- a further misleading
statement to defraud the victim, as defendant's real name would

Deft's Initials

Page 6 of 7

reveal his prior convictions for grand theft as well as negative reviews posted online about defendant's business.

Victim J.H.

On June 4, 2018, after victim J.H. requested a reference, defendant, using the name "Jeff H." and the email address jeff@haventransfer.com, emailed victim J.H. the name and contact information of "Shawn Yepez." Defendant told J.H. that "Yepez" had successfully cosigned a "2017 Mercedes Benz S550 sedan." However, as defendant knew at the time, "Shawn Yepez" was a false name, and "Yepez" had never consigned a car with defendant's company. Nonetheless, when J.H. spoke with the fake reference -- who was, in actuality, defendant's friend and business associate -- the reference falsely told J.H. that defendant had successfully transferred the lease of his 2017 Mercedes Benz. As a result of defendant's misrepresentations, J.H. eventually consigned his 2017 Bentley Bentayga with defendant's company and suffered approximately $14,388.54 in losses due to, among other reasons, missed or reversed payments, mileage overages, and toll violations.

Victim M.H.

On March 2, 2019, less than two months after federal agents searched defendant's business pursuant to a search warrant and told defendant in an interview he was committing fraud, defendant created the company "Open Lease Transfer" and continued to operate his scheme to defraud victims out of their high-end vehicles. For example, on August 6, 2019, defendant, using the alias "Jefrii Eldridge," emailed his standard

Deft's Initials

Page 7 of 7

introductory email to victim M.H.  In that email, he stated, "My
name is Jefrii and I'm with Open -- the #1 lease transfer
company in the U.S. for luxury and exotic vehicles."  Defendant
further stated in that same email: "[W]e're so confident we can
quickly track down a qualified applicant that we offer a special
program called 'Lease Consignment' that will make your monthly
lease payment if we're unable to find a buyer within 30 days."
Due to defendant's misrepresentations, M.H. entered into a Lease
Consignment Agreement in September 2019 for his 2017 Maserati
Levante.  After defendant failed to make payments, M.H. reported
the car stolen.  The car was ultimately recovered in Las Vegas
and was in poor condition.  Due to defendant's conduct, M.H.
suffered approximately $20,878.56 in losses.

<u>Total Victims and Losses</u>

In total, defendant defrauded at least approximately 128
individuals and caused actual loss of at least approximately
$1,560,321.12.

Deft's Initials ___